# EXHIBIT "A"

## MODIFICATION AGREEMENT

**THIS MODIFICATION AGREEMENT**, dated as of July ____, 2010, by and between **Sovereign Bank**, a federal savings bank, with a place of business at 330 South Service Road,, Suite 118, Melville, New York, hereinafter called "Bank," and **Ridgewood Corp.**, a New Jersey corporation, and a debtor and debtor in possession, with its chief executive office at 500 Corporate Drive, Mahwah, New Jersey, hereinafter called "Borrower."

### RECITALS

**WHEREAS**, Bank and Borrower entered into a Loan and Security Agreement dated October 10, 2003 (said agreement as amended or modified from time to time the "Loan Agreement"), which sets forth the terms and conditions of a revolving credit facility and term loans by Bank to Borrower; and

**WHEREAS**, on June _____, 2010, (the "Filing Date"), Borrower filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey, under docket # 10-28711, and Borrower has retained possession of its assets and is authorized under Sections 1107 and 1108 of the Bankruptcy Code to continue the management and operation of its business as debtor in possession; and

**WHEREAS**, Borrower has requested that Bank modify the Loan Agreement to provide for new debtor in possession financing, under a revolving credit facility through July _____, 2010 in the maximum amount of up to One Million Three Hundred Thousand Dollars ($1,300,000.00), which will provide working capital for Borrower; and

**WHEREAS**, Bank has approved the application of the Borrower and has agreed to provide such financing upon the terms and conditions set forth in the Loan Agreement as modified hereby, and other Loan Documents, and upon the entry of and subject to the terms of a Financing Order acceptable to Bank.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the parties hereto adopt the above recitals and agree as follows:

1.    Capitalized terms not defined herein but defined in the Loan Agreement shall have the same meanings ascribed to such terms in the Loan Agreement.

2.    Borrower hereby acknowledges and confirms that Borrower is indebted to Bank for obligations under the Loan Agreement, as of the date hereof, in respect of Bank Indebtedness owing as of the Filing Date consisting of loans made pursuant to the Loan Agreement in the principal amount of $_____, plus interest accrued and accruing thereon, costs, expenses, fees (including in-house and outside counsel fees and expenses) and all other charges owed by Borrower to Bank under the Loan Agreement, all of which are unconditionally owing by Borrower to Bank, without offset, defense or counterclaim of any kind, nature or description whatsoever.

3    Borrower hereby acknowledges, confirms and agrees that Bank has and shall continue to have valid, enforceable and perfected first priority (subject only to liens or security interests expressly permitted under the Loan Agreement) (the "Permitted Liens"), and senior security interests in and liens upon all prepetition Collateral heretofore granted to Bank for the benefit of Bank, pursuant to the Loan Agreement and other existing Loan Documents (as in effect immediately prior to the Filing Date) to secure all of the Bank Indebtedness, as well as valid

V2                                                                                          1

and enforceable first priority and senior security interests (subject only to the Permitted Liens) in and liens upon all post-petition Collateral granted to Bank for the benefit of Bank, under the Financing Order, hereunder and/or under any of the other Loan Documents or otherwise granted to or held by Bank for the benefit Bank.

4.  The Loan Agreement, as modified hereby, shall be deemed adopted and assumed in full by Borrower, as debtor and debtor-in-possession.

5.  The definition of Bank Indebtedness in section 1.1(d) of the Loan Agreement is herby modified to add the following as the end of said section:

"and shall include Pre-Petition Revolving Obligations and Post-Petition Revolving Obligations.

6.  The term Applicable Additional Amount is hereby modified to be Zero Dollars ($00.00).

7.  The term Maximum Line Amount in as set forth in Section 1.1(ggg) of the Loan Agreement is hereby modified to read as follows:

"(ggg) **"Maximum Line Amount"** means an amount up to Five Million Five Hundred Thousand Dollars ($5,500,000.00).

8.  Section 1.1(f) of the Loan Agreement (the definition of Borrowing Base) is modified to add the following:

", plus (v) the Permitted Overbase Amount."

9.  The definition of Contract Period in section 1.1(l) of the Loan Agreement is hereby modified to read as follows:

**Contract Period** means (a) the period of time commencing on the date hereof and continuing through and including July ____, 2010 unless such date is extended with written consent of Bank in its sole discretion, and if so extended on one or more occasions the last date of the last such extension, or (b) if earlier terminated by Bank pursuant to section 13.2 hereof, the date of such termination, or (c) if earlier, the effective date of a confirmed plan of reorganization not consented to in writing by Bank.

10. Article 1 of the Loan Agreement is hereby modified to add the following definitions:

*Avoidance Actions* means recoveries from, or settlements of, actions commenced by, or on behalf of, Borrower's bankruptcy estate under Chapters 5 or 7 of the Bankruptcy Code, including, without limitation, Sections 544, 545, 547, 548, 549, 550 or 724 of the Bankruptcy Code.

*Bankruptcy Code* means Title 11, United States Code.

*Bankruptcy Court* means the United States Bankruptcy Court for the District of New Jersey, or such other court having jurisdiction over the Case.

*Case* means Borrower's reorganization case under Chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court.

*Collateral* means all existing and future assets of Borrower of all kind (as debtor and debtor-in-possession and before and after the Filing Date) including without limitation, real and personal property, all rights under real property leases, whether in existence or arising prior to or after filing of the Case, and all other choses in action, but excluding all Avoidance Actions.

*Financing Order* means a non-appealable order authorizing, *inter alia*, the granting of credit by Bank to Borrower pursuant to Section 364 of the Bankruptcy Code, entered by the Bankruptcy Court in the Case in form satisfactory to Bank, as may be continued or revised with the consent of Bank, and any subsequent order pursuant to Section 364 of the Bankruptcy Code, that is consented to by Bank in its absolute discretion.

*Super-Priority Administrative Expense* means a claim against Borrower or its estate in its Case which is an administrative expense claim having priority over any now existing or hereafter arising (i) administrative expenses allowed pursuant to Section 105, 330, 331, 503(b), 506(c), 507 or 726 of the Bankruptcy Code, and (ii) unsecured claims now existing or hereafter arising, including, without limitation, administrative expenses of the kind specified in Section 503(b), 506(c) or 507(b) of the Bankruptcy Code.

*Permitted Overbase Amount* means an amount agreed to in writing by Bank in its sole discretion up to the sum of One Million One Hundred Thousand Dollars ($1,100,000.00).

*Pre-Petition Revolving Obligations* means all obligations of Borrower to Bank with respect to Advances prior to the Filing Date under the revolving credit facility provided for in Section 2.1 of the Loan Agreement.

*Post-Petition Revolving Obligations* means all obligations of Borrower to Bank with respect to Advances after the Filing Date under the revolving credit facility provided for in Section 2.1 of the Loan Agreement.

11. Notwithstanding any terms of the Loan Agreement to the contrary, the aggregate outstanding balance of the Advances, including both Pre-Petition Revolving Obligations and Post-Petition Revolving Obligations, under the Line provided for in Section 2.1 of the Loan Agreement shall not exceed the lesser of (a) the Borrowing Base, or (b) the Maximum Line Amount.

12. All Advances which constitute Post-Petition Revolving Obligations shall accrue interest at interest rate set forth in Section 3.1 of the Loan Agreement (which the Borrower acknowledges is the greater of seven percent (7%) or the Prime Based Rate (which is the Bank's Prime Rate plus 325 basis points)).

13. Borrower agrees that notwithstanding any terms of the Loan Agreement to the contrary if Borrower obtains payment of an Account or other Collateral all payments on Accounts and other Collateral are to be held in trust by Borrower for Bank and forwarded to Bank (with any necessary endorsement) by overnight delivery and/or at Bank's discretion deposited into a blocked deposit account in the name of and under the exclusive control of Bank. All such payments shall be applied by Bank to the Bank Indebtedness in accordance with the Loan Agreement, and shall be applied first to the Pre-Petition Revolving Obligations and second to the Post-Petition Revolving Obligations.

V2                                                                 3

Interest, and all fees and expenses, on the Bank Indebtedness shall continue to accrue and be payable as set forth in the Loan Agreement.

14. Article 7, ("General Covenants") of the Loan Agreement is hereby modified to add Sections 7.32 through 7.33 as follows:

  **7.32**    **Compliance with Bankruptcy Court.** Borrower shall comply in full with the notice and other requirements of the Bankruptcy Code and all other applicable rules with respect to any relevant Financing Order in a manner acceptable to Bank and its counsel. Borrower shall timely file all monthly reports required by the office of the United States Trustee and contemporaneously supply Bank with copies of same.

  **7.33**    **Bankruptcy Cases.** Borrower shall not seek, consent or suffer to exist (i) any modification, stay, vacation or amendment to any Financing Order, unless Bank has consented to such modification, stay, vacation or amendment in writing, (ii) a priority claim for any administrative expense or unsecured claim against Borrower (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative expense of the kind specified in Section 503(b), 506(c) or 507(b) of the Bankruptcy Code) equal or superior to the priority claim of Bank in respect of the Bank Indebtedness, or (iii) any lien on any Collateral, having a priority equal or superior to the liens in favor of Bank in respect of the Bank Indebtedness.

13. Section 13.1 of the Loan Agreement ("Events of Default") is hereby modified to add subsections (v) through (aa) as follows:

  **(v)**    **Bankruptcy Court.** The Bankruptcy Court enters any order (i) amending, supplementing, altering, staying, vacating, rescinding or otherwise modifying any Financing Order or any other order with respect to the Case affecting in any material respect the Loan Agreement as modified, (ii) appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code in the Case, (iii) dismissing the Case or converting the Case to a chapter 7 case or (iv) granting relief from the automatic stay to any creditor holding or asserting a lien or reclamation claim.

  **(w)**    **Judgments or Execution Action.** There remains undischarged for more than ten (10) days any final post-petition judgment or execution action against Borrower, or relief from the automatic stay of Section 362(a) of the Bankruptcy Code shall be granted to any creditor or creditors of Borrower with respect to assets of the Borrower having an aggregate value in excess of $10,000 or where the deprivation of Borrower of such assets would reasonably be expected to have a material adverse effect on Borrower.

  **(x)**    **Motions.** Borrower files a motion in the Case (i) to use cash collateral of Bank under Section 363(c) of the Bankruptcy Code without Bank's consent, (ii) to recover from any portions of the Collateral any costs or expenses of preserving or disposing of such Collateral under Section 506(c) of the Bankruptcy Code, or (iii) to take any other action or actions adverse to Bank or its rights and remedies under the Loan Agreement, as modified, or under any of the other Loan Documents or any of the documents evidencing or creating Bank's interest in any of the Collateral or under the Financing Order;

  **(y)**    **Actions.** A suit or action against Bank is commenced by Borrower, any federal, state environmental protection or health and safety agency or any official committee in the Case or any other party in interest, which suit or action asserts any claim or legal or equitable remedy contemplating subordination of any claim or lien of Bank, and shall remain undismissed or unstayed for thirty (30) days after its commencement without any preliminary relief of the nature sought having been granted;

  **(z)**    **Reorganization Plan.** Borrower files a plan of reorganization in the Case which does not provide for payment in full of the Bank Indebtedness owing to Bank on the effective date thereof or to which Bank does not otherwise consent.

(aa)    **Final Order.** A Final Order which is a Financing Order authoring this Modification Agreement is not entered by July ____, 2010.

15.    **Grant of Continuing Security Interest.** Borrower (as debtor and as debtor in possession) hereby grants to Bank a continuing security interest in all presently existing and hereafter acquired or arising Collateral in order to secure prompt repayment of the Bank Indebtedness and in order to secure prompt performance by Borrower of each and all of its covenants and Bank Indebtedness under the Loan Documents and otherwise. To the extent that the Collateral consists of "Collateral" as that quoted term is defined in the Loan Agreement, Borrower hereby confirms, reaffirms and restates the prior grant to Bank of continuing security interests in that Collateral. Bank's continuing security interest in the Collateral shall attach to all Collateral without further act on the part of Bank or Borrower.

16.    Borrower represents that:

(a)    no consent or approval of, or exemption by any person or entity is required to authorize, or is otherwise required in connection with the execution and delivery of this Modification Agreement and the other Loan Documents provided for herein, which has not been obtained and which remains in full force and effect, including, without limitation, the Financing Order;

(b)    Borrower has the power to execute, deliver and carry out this Modification Agreement and all documents executed in connection herewith, and this Modification Agreement and such other documents are valid, binding and enforceable as against Borrower in accordance with their terms;

(c)    no material adverse change in the financial condition of Borrower has occurred since the date of the most recent financial statements of Borrower submitted to Bank, and the information contained in said statements and reports is true and correctly reflects the financial condition of Borrower as of the dates of the statements and reports, and such statements and reports have been prepared in accordance with GAAP and do not contain any material misstatement of fact or omit to state any facts necessary to make the statements contained therein not misleading;

(d)    An applicable Financing Order has been duly entered, is valid, subsisting and continuing and has not been vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than as consented to by Bank) and is not subject to any pending appeal or stay; and

(f)    Upon the entry of a Financing Order the Bank Indebtedness: (a) shall at all times constitute a Super-Priority Administrative Expense having priority, pursuant to Sections 364(b) and 364(c)(1) of the Bankruptcy Code, over any other claims of any entity, including, without limitation, any claims under Sections 503, 507, 1113, and 1114 of the Bankruptcy Code, and (b) pursuant to Sections 364(c)(2) and (3) and 364(d) of the Bankruptcy Code, shall at all times be secured by a first priority perfected lien in all of the assets, whether now owned or hereafter acquired of Borrower and its estate, pursuant to the terms of the Loan Documents, subject to the Permitted Liens as set forth in the Loan Agreement.

17. Borrower agrees to pay any and all expenses, including reasonable counsel fees, including allocated fees of in-house counsel, and fees of outside counsel, and disbursements, incurred by Bank in connection with the preparation and execution of this Modification Agreement and all other documents executed in connection herewith, and entry of the Financing Order, and hereafter incurred with respect to the Bank Indebtedness of Borrower to Bank and the Case.

18. This Modification Agreement is intended to supplement and modify the Loan and Security Agreement dated as of October 10, 2003, as heretofore amended or modified, between Bank and Borrower as heretofore modified and the rights and obligations of the parties under said Loan and Security Agreement shall not in any way be vacated, modified or terminated except as herein provided. All terms and conditions contained in each and every agreement or promissory note or other evidence of indebtedness of Borrower to Bank are incorporated herein by reference. If there is a conflict between any of the provisions heretofore entered into and the provisions of this Modification Agreement, then the provisions of this Modification Agreement shall govern.

19. This Modification Agreement shall be construed in accordance with the substantive laws of the State of New Jersey without regard to conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused this Modification Agreement to be executed and delivered as of the day and year first above written.

**Ridgewood Corp.**
As debtor and debtor-in-possession

By:_____
    Name:
    Title: President

**Sovereign Bank**

By:_____
    Name:
    Title:

V2　　　　　　　　　　　　　　　　　6