**WASSERMAN, JURISTA & STOLZ, P.C.**
225 Millburn Avenue - Suite 207
P.O. Box 1029
Millburn, New Jersey  07041
Phone: (973) 467-2700
Fax: (973) 467-8126
**LEONARD C. WALCZYK (LW-4720)**
**Counsel for Debtor**

| | |
|---|---|
| In Re: | :UNITED STATES BANKRUPTCY COURT<br>:FOR THE DISTRICT OF NEW JERSEY<br>:CHAPTER 11 |
| **RIDGEWOOD CORP.,** | :<br>: Case No.:  10- |
| Debtor. | :<br>: Hon. Rosemary Gambardella<br>:<br>: Hearing Date: |

**AFFIDAVIT OF STUART WEINSTEIN IN SUPPORT**
**OF DEBTOR'S VARIOUS "FIRST DAY MOTIONS"**

STATE OF NEW JERSEY    )
                       ) ss.
COUNTY OF ESSEX        )

STUART WEINSTEIN, being duly sworn according to law, upon his oath, deposes and says the following:

1.     I am the President of Ridgewood Corp. the within debtor and debtor-in-possession ("Ridgewood" or the "Debtor"). I am involved with the Debtor's day-to-day operations, business affairs and records. As such I am familiar with the facts as set forth herein and I am authorized to make this Affidavit on the Debtor's behalf.

**I.     INTRODUCTION**

2.     On June 18, 2010, General Plumbing Supply, Aaron & Company and Birdsall filed an Involuntary Chapter 7 Petition against the Debtor.

3.      On June 23, 2010, the Court entered an Order shortening time, scheduling a hearing on

a Motion by the Petitioning Creditors for the appointment of an Interim Trustee, scheduling the

hearing for June 24, 2010.

4.      On June 23, 2010, this Court entered an Order Shortening Time, scheduling a hearing

for June 24, 2010, on the Motion by Sovereign Bank, seeking relief from the automatic stay to be

permitted to enforce its secured claim against the Debtor's assets.

5.      On June 25, 2010, the Court conducted a hearing on the Motions of the Petitioning

Creditors and Sovereign Bank.  During the course of said hearing, the Debtor, through its counsel,

expressed the Debtor's intention to file a Voluntary Chapter 11 Petition.

6.      Based upon the Debtor's representation that it would be filing a Voluntary Chapter 11

Petition and thereafter filing the within motion to sell assets, the Petitioning Creditors withdrew

their Motion for the appointment of an Interim Trustee.  The Sovereign Bank Motion for Relief

from the Automatic Stay has been adjourned to the return date of the sale Motion.

7.      On July 1, 2010, the Debtor filed a Voluntary Petition, pursuant to 11 U.S.C. 1101 et.

seq.  The Debtor has been certified as a Debtor in Possession and remains in possession and control

of its assets.

8.      The Debtor has submitted Applications for the retention of Wasserman, Jurista &

Stolz, P.C. to serve as Bankruptcy counsel, for Brown, Moskowitz & Kallen, P.C. to serve as

transactional counsel and for the retention of Morris-Anderson & Associates, Ltd. to serve as

Financial Advisors.

9.      Ridgewood is engaged in the business of sales and distribution of plumbing, heating

and cooling supplies and products.  Ridgewood's corporate offices are located at 500 Corporate

Drive, Mahwah, New Jersey.

10.     To avoid the potentially disruptive impact the commencement of this Chapter 11 case

might have on the Debtor's business, the Debtor has requested that the Court consider, on shortened

notice, the following motions filed simultaneously with the Debtor's Chapter 11 petition:

      (a)     motion for an Order:

      (i) authorizing the Debtor to obtain Debtor in Possession Financing and for

*nunc pro tunc* use of cash collateral of Sovereign Bank ("Sovereign"),

      (ii) scheduling a final hearing date on said motion, and

      (iii) granting other related relief;

      (b)     motion for an Order authorizing the Debtor to satisfy, and directing payroll

banks to honor, pre-petition gross salaries, and related obligations to the Debtor's employees;

      (c)     motion for an Order authorizing the Debtor to maintain its active bank

account and continue using its existing business forms and cash management systems; and

      (d)     motion for an Order restraining utilities from discontinuing, altering or

refusing service pursuant to 11 U.S.C. § 366, and establishing procedures for determining requests

for adequate assurance (collectively, the "First Day Motions").

    11.    The purposes of the First Day Motions include, among other things, to:

      (a)     insure that Debtor's ability to operate in the ordinary course and to minimize

disruption of its ability to continue to provide quality service and products to its clients;

      (b)     maintain and bolster employee morale so as to reduce employee attrition

during the Debtor's Chapter 11 proceeding, which would have a detrimental impact on the

Debtor's business, customer service and value of assets of the estate;

      (c)     maintain vendor relationships; and (d) preserve the confidence of customers.

    12.    Each of the First Day Motions is critical to the Debtor's reorganization efforts and

preservation of the estate's assets.  The purpose of this Affidavit is to explain the circumstances

precipitating the Debtor's Chapter 11 proceeding and provide general information about the Debtor

and its business operations that is germane to the First Day Motions.

13.     The factual statements in this Affidavit are based on my personal knowledge, information supplied to me by others under my supervision, my review of relevant documents and/or my opinions based on my experience and knowledge of the Debtor's operations, financial condition and the industry in general.

## II. THE DEBTOR'S BUSINESS AND BACKGROUND

### A.     The Debtor's Business

14.     Jules (a/k/a Mickey) Weinstein is the Chief Executive Officer of Ridgewood. His son, Stuart Weinstein, is the President of Ridgewood. Jules, his wife Myrna, and Stuart are the sole stockholders of Ridgewood.

15.     Ridgewood was formed in 1922 and had been a very successful business for many years. Initially, Mickey Weinstein had several partners in the business. As those partners grew older, or passed away, the stock ownership of the partners was purchased by Mickey and Stuart Weinstein.

16.     In order to appropriately service the needs of Ridgewood customers, Ridgewood opened supply facilities in New Jersey, New York and Pennsylvania. At one time, Ridgewood maintained as many as 18 supply facilities.

17.     In late 2008 and 2009, Ridgewood's business began to experience substantial losses as a result of the general economic decline and industry related issues. For the year 2009, Ridgewood suffered an operating loss of approximately $2 million. Ridgewood's sales volume decreased from high of $71.75 million in 2006 to $33.85 million in 2009.

18.     Management of Ridgewood took all available steps to reduce overhead expenses,

including closing a number of less profitable supply facilities and significantly reducing staffing. Unfortunately, even those reductions did not stem the tide of continuing losses, even with additional injections of capital from shareholders of approximately $3 million.

19.    During early 2010, Ridgewood's finances and business operations continued to deteriorate, on an accelerating basis.

20.    In March 2010, Ridgewood retained Morris Anderson, a nationally known and recognized restructuring advisor, to evaluate Ridgewood's business and determine whether Ridgewood could survive the tide of continuing operating losses.

B.    **The Sovereign Loan**

21.    In 2003, Ridgewood entered into a borrowing relationship with Sovereign Bank ("Sovereign"). The initial lending relationship was based upon a $20 million revolving credit facility plus a $500,000.00 equipment line.

22.    The initial lending arrangement was amended and modified in 2006 and twice during 2007.

23.    As Ridgewood's business volume began to decline and it began to suffer losses, Sovereign and Ridgewood from time to time restructured the lending relationship to adjust the borrowing base components of the revolving credit facility to reflect the changing level of business of Ridgewood and its borrowing needs, including creating or modifying sublimits of the borrowing base availability against inventory and the maximum line available to Ridgewood.

24.    On or about March 8, 2010, Sovereign notified Ridgewood of the occurrence of events of default under the loan arrangement.

25.    On or about April 15, 2010, Sovereign served Ridgewood with a Notice of Partial Exercise of Remedy and Reservation of Rights.

26.     Ridgewood remains in default under the Sovereign Loan Agreement and the outstanding principal balance of the advances under the revolving credit facility is well beyond the lending limits and the borrowing base formula established under the Loan Agreement.

27.     Sovereign holds a validly perfected lien on all assets of Ridgewood, including its inventory, accounts receivable, equipment, contract rights and general intangibles.

28.     Sovereign also holds a first mortgage on certain real property and improvements located in Tenafly, New Jersey owned by Ridgewood.  The mortgage secures all obligations and liabilities of Ridgewood to Sovereign, including the loans under the revolving credit facility, equipment term loan, and a term loan in the original principal amount of Eight Hundred Thousand Dollars ($800,000.00) and on which term loan there is currently owing the approximate principal balance of Seven Hundred Twenty Thousand Dollars ($720,000.00) plus interest, fees, and expenses.

29.     As of June 21, 2010, Sovereign is owed by Ridgewood the approximate aggregate principal amount of Five Million Five Hundred Twenty Two Thousand Five Hundred Ninety Dollars ($5,522,590.00) plus interest, late fees, counsel fees and other charges.

30.     The Debtor's inventory at cost is approximately Six Million Seven Hundred Thousand Dollars ($6,700,000.00), however, Four Million Dollars ($4,000,000.00) of that inventory is slow moving or non-moving.  When the inventory had a cost value of Eight Million Seven Hundred Thousand Dollars ($8,700,000.00), Accuval Appraisal valued the inventory at Three Million Seven Hundred Thousand Dollars ($3,700,000.00) orderly liquidation value and One Million Five Hundred Thousand Dollars $1,500,000.00) forced sale value.  Those figures should now be reduced as the inventory has been reduced by Twenty Three Percent (23%). Applying that reduction, the inventory presently has an orderly liquidation value of Two Million

Eight Hundred Fifty Thousand Dollars ($2,850,000.00) and a liquidation value of One Million One Hundred Fifty-Five Thousand Dollars ($1,155,000.00).

31.    As of June 21, 2010, Ridgewood's accounts receivable totaled $2,975,607 of which $1,506,444 is over ninety (90) days old and therefore of questionable collectability.

32.    Ridgewood's machinery and equipment is quite old and of limited value.  It is estimated that all of Ridgewood's fixtures, machinery and equipment would bring approximately $24,000 in a liquidation.

33.    The Tenafly property was recently appraised for a fair market value of Nine Hundred Thousand ($900,000.00).  This value does not take into account costs and expenses that would need to incurred to sell the Tenafly property in an orderly fashion, and the costs and expenses that would need to be incurred during the anticipate extended period of time of the sale process, including the payment of brokerage commissions, taxes, insurance, utilities, security, and the like.  As stated above, the Tenafly property is subject to a first mortgage held by Sovereign securing all obligations and liabilities of Ridgewood to Sovereign.

34.    Based upon estimates by Morris Anderson, even if the inventory and accounts receivable are sold and collected in an orderly process to maximize value, the net proceeds recovered would amount to at least $1 million less than the amount due to Sovereign on its revolving credit facility as of the date hereof, excluding costs and expenses that would need to be incurred in liquidating/collecting the inventory and accounts receivable.

35.    None of the principals of Ridgewood are indebted on personal guarantees to Sovereign.

C.    **The Real Property Leases**

36.    Ridgewood is party to fourteen (14) real property leases (the "Leases").

37.    Ten of the properties are leased from entities controlled by members of the Weinstein family (the "Related Party Leases").

38.    The remaining four properties have been leased from third party Landlords (the "Third Party Leases").

39.    The Debtor continues to operate from all of the leased locations, with the exception of its Voorhees facility, which was closed several months ago.

**D.    The Proposed Blackman Transactions**

40.    Shortly after Morris Anderson completed their initial review of the Debtor's operations, a conclusion was reached by management of the Debtor and Morris Anderson that Ridgewood could not continue to self-sustain and operate effectively.

41.    Based upon the foregoing, management of Ridgewood requested that Morris Anderson assist in determining whether a buyer or buyers could be located, interested in purchasing the Ridgewood business assets.

42.    Morris Anderson reached out to competitors in the geographic area. A number of those competitors, including the three Petitioning Creditors in the Involuntary Case, signed Nondisclosure Agreements with Ridgewood.

43.    After conducting preliminary discussions with all parties who expressed an interest, Ridgewood and Morris Anderson identified a group of affiliates of Blackman Plumbing Supply Company (collectively "Blackman"), Inc. as the party likely to tender the most comprehensive and beneficial offer with respect to Ridgewood's assets. While many of the other competitors wished only to "cherry pick" certain of Ridgewood's assets and operations, Blackman was prepared to immediately enter into a comprehensive arrangement that would be expected to result in (a) Blackman's maintaining a plumbing supply business in all of Ridgewood's branch locations, (b) a significant capital investment by Blackman to upgrade and

modernize these branches, (c) Blackman's acquisition of Ridgewood's Tenafly, NJ property, (d) the hiring of the vast majority of Ridgewood's approximately 70 employees, and, perhaps most important, (e) the sale, on a consignment basis, of Ridgewood's inventory and the collection of its receivables, both in an orderly fashion and in the ordinary course of Blackman's business, thereby maximizing the proceeds available to creditors.   The proposed arrangements with Blackman were also reviewed with Sovereign Bank, which agreed that, although it did not expect that the arrangements with Blackman would result in full repayment of the Sovereign loans, they would yield the highest and best recovery under the circumstances.

44.    The proposed Blackman Transactions are the subject of a separate motion for approval of Section 363 sale pending before this Court.

### III.    FACTORS PRECIPITATING THE DEBTOR'S CHAPTER 11 FILING AND THE DEBTOR'S OBJECTIVES IN CHAPTER 11.

45.    The Debtor's bankruptcy filing was precipitated by a significant decrease in annual revenues which caused the Debtor to default on its obligation to Sovereign Bank.  A fair valuation of the Debtor's assets shows that Sovereign Bank is woefully undersecured.  Without continued financing under its revolving loan with Sovereign, the Debtor is unable to sustain business operations or acquire inventory.  Thus, an orderly wind down of its affairs through a Chapter 11 proceeding appears to be the best available alternative to maximize any potential distribution to creditors of the Debtor.

46.    The relief requested in the First Day Motions is necessary to allow the Debtor to stabilize its affairs as it transitions into Chapter 11.  It is therefore respectfully requested that the Court grant each of the Debtor's First Day Motions and enter the proposed Orders accompanying same.

47.    I swear that the foregoing statements by me are true to the best of my knowledge,

information and belief and I make such statements knowing that this Court shall act in reliance of

same.

**STUART WEINSTEIN**

Sworn and subscribed to
Before me this  /  day of
     July    , 2010

Attorney at Law A Notary Public of New Jersey
My Commission Expires on