# EXHIBIT 'D'

OUTLINE OF EMPLOYMENT TERMS

(Applicable to Jules (Mickey) and Stuart Weinstein,
each referred to herein as "Employee")

I. <u>Term</u>. The term of employment shall commence on the closing date (the "Closing Date") of the sale transaction by and among New Jersey Plumbing Group, LLC (the "Company"), its affiliates, Ridgewood Corp. ("Ridgewood") and Sovereign Bank, and shall continue for an initial term of six (6) months (the "Initial Term"), and, thereafter, such employment may continue on an at-will basis.

II. <u>Compensation</u>.

(a) Base Salary. The Company shall pay a base salary at an annual rate of One Hundred Fifty Thousand ($150,000) Dollars to Mickey and One Hundred Twenty Five Thousand ($125,000) Dollars to Stuart, payable in accordance with the Company's normal payroll practices.
(b) Incentive Compensation. Eligible for Company Incentive Program.
(c) Bonus. The Employee may receive an annual bonus in the sole and absolute discretion of the Company. Stuart shall receive a special bonus of One Thousand Two Hundred Fifty ($1,250.00) Dollars per month, to be paid monthly for as long as Stuart is employed by the Company, provided that such special bonus will not exceed, in the aggregate, Fifteen Thousand ($15,000) Dollars.

III. <u>Duties</u>. Previously provided under separate cover to the Company.

IV. <u>Expenses</u>. Subject to compliance by the Employee with such policies regarding expenses and expense reimbursement as may be adopted by the Company, the Employee will be authorized to incur reasonable expenses in the performance of his duties in furtherance of the business of the Company.

V. <u>Vacation</u>. The Employee shall be entitled to three (3) weeks of paid vacation in accordance with the policies of the Company.

VI. <u>Employee Benefits; Cell Phone</u>. The Employee shall be eligible to participate in the following pension, profit-sharing, life insurance, medical and other employee benefit plans of the Company which may be in effect from time to time, to the extent Employee is eligible under the terms of those plans, on the same basis as employees of the Company:

1

a) <u>Mickey</u>:

    Medical Benefits:  Company medical program 50% paid by company-low plan; High plan also available
                            Dental Plan (Employee Contribution Only)
                            Optional Life Insurance (Employee Paid)
    Life Insurance:  $ 50,000 Group Term Life
    Short Term Disability
    Long Term Disability
    Retirement Plan: 401(k) Benefit Program
    Cell Phone:    Company reimbursed cell phone allowance

(b) <u>Stuart</u>:

    Medical Benefits: Company medical program 50% paid by company-low plan; High plan also available
                            Dental Plan (Employee Contribution Only)
                            Optional Life Insurance (Employee Paid)
    Life Insurance:  2 times base pay comprised as follows:
- $ 50,000 Group Term Life
- Executive Carve-Out Plan-Universal Life

    Short Term Disability
    Long Term Disability
    Retirement Plan: 401(k) Benefit Program
    Cell Phone:    Company reimbursed cell phone allowance

VII.   <u>Automobile Allowance</u>. The Employee shall receive an automobile allowance of $600 per month plus reimbursement for fuel and tolls pursuant to the Company Car Policy.

VIII.  <u>Restrictive Covenants</u>. During the term of the Employee's employment with the Company or any affiliate, and for the period set forth below following the termination of the Employee's employment by the Company, in addition to any other obligations of the Employee, the Employee shall not, directly or indirectly (a) interfere with the employment and/or consulting arrangements between the Company and any of its affiliates and their employees and consultants, or offer to employ or hire, without the prior written consent of the Company or its affiliate, any person who was an employee of the Company or any of its affiliates on the Closing Date, or was employed by Ridgewood, the Company or any of its affiliates during the twelve month period prior to the Closing Date, or (b) (i) induce any person or entity (each, a "Person"), or do business with any Person, which is, or was a customer of Ridgewood during the twelve month period prior to the Closing Date, or of the Company or any of its affiliates during the twelve month period prior to the termination date of the Employee's employment, to patronize any business directly or indirectly

2

in competition with the Company or any of its affiliates; (ii) canvass, solicit or accept from any Person who is, or was a customer of Ridgewood during the twelve month period prior to the Closing Date, or of the Company or any of its affiliates during the twelve month period prior to the termination date of the Employee's employment, any such competitive business; or (iii) request or advise any Person who is, or was a customer of Ridgewood during the twelve month period prior to the Closing Date, or of the Company or any of its affiliates during the twelve month period prior to the termination date of the Employee's employment to withdraw, curtail or cancel any such customer's business with the Company or any affiliate (the "Restrictive Covenants"). Upon termination of employment, the Employee shall be bound by the Restrictive Covenants for a period of time equal in duration to the term of employment; provided, however, that the Restrictive Covenants period shall be no less than six (6) months and no more than eighteen (18) months. In addition, for so long as he is employed and for a period of six (6) months following termination of employment, the Employee shall not, directly or indirectly in any capacity, for himself or any other person, engage in or have an ownership or financial interest in or render services to or on behalf of any person or entity that engages in any business located anywhere in the Territory substantially similar to or competitive with the then existing business of the Company or any affiliate. For purposes hereof, the term "Territory" shall mean the State of New Jersey and anywhere within a radius of fifty (50) miles of any then existing business location of the Company or any affiliate in the State of New York or the Commonwealth of Pennsylvania. The Employee will not, at any time hereafter, make use of or disclose or divulge to any Person (other than to officers or employees of the Company or its affiliates whose province it is to know the same) any information (other than any information properly available to the public or disclosed or divulged pursuant to an order of a court of competent jurisdiction) relating to the Company, its affiliates or their business, the identity of the customers and suppliers of the Company, its affiliates or their business, or the products, finances, contractual arrangements, business or methods of business of the Company, its affiliates or their business and shall use its best endeavors to prevent the publication or disclosure of any such information. The Employee acknowledges that any violation of any provision of this Section will cause irreparable harm to the Company and its affiliates, that damages for such harm will be incapable of precise measurement and that, as a result, the Company and its affiliates will not have an adequate remedy at law to redress the harm caused by such violations. Therefore, in the event of a violation of this Section by the Employee, such Employee agrees that, in addition to its other remedies, the Company and its affiliates shall be entitled, without the necessity of either proof of actual damage or the posting of a bond, to injunctive relief, including but not limited to an immediate temporary injunction, temporary restraining order and/or preliminary or permanent injunction to restrain or enjoin any such violation.

3

ACKNOWLEDGED, AGREED AND ACCEPTED:

NEW JERSEY PLUMBING GROUP, LLC

By: _____
Robert Mannheimer, ~~Manager~~ PRESIDENT

_____
JULES WEINSTEIN

_____
STUART WEINSTEIN

4